WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Denisse Urias-Virrey,<br><br>    Defendant. | No. 22-02292MJ-001-TUC-EJM<br><br>**ORDER** |

Before the Court is the Government's "Appeal from Magistrate Judge Release Order" (Doc. 10). For the following reasons, the Court will deny the Government's Appeal and affirm the Release Order, (Doc. 9), with additional conditions.

**I.   Background**

On November 13, 2022, Defendant was stopped entering the United States from Mexico. (Doc. 1.) She was referred to secondary inspection when she could not provide the name of the church or friend she was allegedly bringing a load of musical equipment. (*Id.*) At secondary inspection, officers discovered eight-hundred ninety-one (891) packages of suspected narcotics in the musical equipment. (*Id.*) These packages contained 4.08kg cocaine, 8.42kg fentanyl powder, and 129.66kg fentanyl pills (over 1,000,000 pills). (*Id.*; *see also* Doc. 10.) After waiving her *Miranda* rights, Defendant denied knowledge of the controlled substances in her vehicle. (*Id.*)

On November 15, Pretrial Services issued a Bail Report recommending release with 11 conditions to reasonably assure Defendant's appearance. (Doc. 3 at 4–5.) On November

17, Magistrate Judge Bowman held a detention hearing and adopted the Pretrial Services recommendation with an additional condition of release to a third-party custodian. (Doc. 7.) This appeal followed, and the Court ordered simultaneous briefing and heard oral argument on November 21.[1] (Doc. 12.) The Court took the parties' arguments under advisement. (*Id.*) This is the Court's written order.

## II.    Legal Standard

A district court's review of a magistrate judge's detention order is de novo. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act of 1984 mandates the release of a person pending trial unless the court concludes that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e). It is presumed that there are no such conditions if there is probable cause to believe that the defendant has violated a provision of the Controlled Substances Act or the Controlled Substances Import and Export Act punishable by at least 10 years in prison. 18 U.S.C. § 3142(e)(3)(A). This presumption shifts the burden of production to the defendant, but the burden of persuasion remains with the Government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). If defendant proffers evidence to rebut the presumption of dangerousness or flight risk, the Court then considers four factors in determining whether to detain or release the defendant:

> (1) the nature and circumstances of the offense charged…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community

---

[1] Without prior leave of court, Defendant also filed a Supplement to her briefing on November 22, 2022.

- 2 -

that would be posed by the person's release....

(*Id.*; 18 U.S.C. § 3142(g).)

The Government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). A finding that a person presents a danger to the community must be proved by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in Defendant's favor. (*Id.* at 1405.) However, the presumption against release remains, even when rebutted, and is to be considered alongside all other relevant factors. *Hir*, 517 F.3d at 1086.

## III. Analysis

The Bail Reform Act creates a rebuttable presumption that a defendant must be detained if there is probable cause to believe that she violated a provision of the Controlled Substances Act punishable by a maximum of 10 years or more. 18 U.S.C. § 3142(f)(1)(A).

Here, the Government asserts that the statutory maximum for the offense allegedly committed by Defendant is life in prison. Based on the quantity of drugs found in the Defendant's car and her inconsistent statements, the Court finds that probable cause exists. (*See* Docs. 3, 10, 12.) The burden shifts to Defendant to proffer evidence rebutting the presumption of dangerousness or flight risk. Defendant offers her strong ties to Tucson, Arizona, including 20-year residence, Legal Permanent Resident status, and responsibility for two minor children; stable work history; absence of drug or alcohol abuse; and little criminal history (one conviction for allowing a dog to run at large and an associated failure to appear). (Doc. 11.) This is sufficient to rebut the presumption, so the Court considers the four Bail Reform Act factors together with the rebutted presumption against release.

### A. Bail Reform Act Factors

#### 1. Nature and Circumstances of the Offense

Defendant is charged with one count of Possession with Intent to Distribute more than 500 grams of cocaine and one count of Possession with Intent to Distribute more than 400 grams of fentanyl. (Doc. 1.) The Court may consider the possible punishment and the

incentive to flee associated with a defendant's criminal exposure. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, the nature and circumstances of the offense favor detention. First, the quantity of fentanyl in this case—129.66kg, or more than 1,000,000 pills—is staggering. Second, the possible punishment provides an incentive to flee. Although Defendant is a first-time offender charged with two counts, she faces a minimum of 10 years and a maximum of life in prison. (Doc. 10.) Defendant points out that she is safety valve eligible; that appears true, but if Defendant is convicted at trial, the bottom end of the advisory guideline range will likely be above 120 months. On balance, this factor weighs against Defendant's release.

### 2. Weight of the Evidence Against Defendant

The weight of the evidence is the least important factor that the Court considers and is not a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir.1985); *Townsend*, 897 F.2d at 994. Here, the Government identifies several significant inconsistencies and gaps in Defendant's account to customs agents. (*See* Doc. 10 at 3.) Together with the sheer quantity of drugs found in Defendant's vehicle, the evidence against Defendant is substantial. The Court notes, however, Defendant did not confess after waiving her *Miranda* rights. Still, this factor weighs against Defendant.

### 3. History and Characteristics of Defendant

Defendant is in good physical health, with some history of depression related to domestic violence. (Doc. 3 at 3.)

Defendant has strong family and community ties to Tucson. She has lived in the United States since 2001. (*Id.* at 2.) She remains a citizen of Mexico with Legal Permanent Residence in the U.S. since 2017. (*Id.*) Defendant lives with two minor children from a previous relationship, her sister, and two adult cousins. (*Id.*) Defendant's parents and five siblings reside in Tucson. (*Id.*) Another sibling resides in Phoenix. (*Id.*) Four of Defendant's siblings are U.S. citizens, and the sister who lives with her has DACA status. (*Id.*) Defendant owns the manufactured home where she has lived for two years. (*Id.*)

Defendant also has stable work history in Tucson. (*Id.* at 2.) She has worked part

time as a waitress for the past two months. (*Id.*) Before then, she worked full time at Home Goods for one year and at Sam Levits for six years. (*Id.*)

Defendant has no history of drug or alcohol abuse. (*Id.* at 3.) She also has little criminal history. (*Id.* at 4.) In 2015, she was given probation and fined for allowing a dog to run wild, a misdemeanor offense. (*Id.*) She was also convicted for a failure to appear in that case, also a misdemeanor. (*Id.*)

Defendant also has ties to Mexico. She remains a Mexican citizen. (*Id.* at 2.) Her parents are Mexican citizens. (*Id.*) She has been in a relationship for two months with a Mexican citizen who lives in Sinaloa, Mexico. (*Id.*) She has been pregnant for one month, potentially from her relationship with the Mexican citizen. (*Id.*) And she travels to Mexico frequently, as often as once per week. (*Id.*)

On balance, this factor weighs in favor of Defendant's release.

### 4. Dangerous Nature

The Bail Reform Act gives a broader construction to danger of harm than merely danger of physical violence. S. Rep. at 12-13, 1984 U.S. Code Cong. & Adm. News, 3195; *see also United States v. Bolivar*, 455 F. Supp. 3d 1165, 1170-71 (D.N.M. 2020). Distributing narcotics is a serious offense and distributing specifically fentanyl is even more so. *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020). A risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community." *United States v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985) (citation omitted).

Here, the Government does not suggest that Defendant will continue to traffic fentanyl if she is released. Instead, the Government underlines the amount of fentanyl involved and implies this shows that Defendant is a danger to the community. Although the Court is disturbed by the quantity of fentanyl in this case, it disagrees with the Government's assessment. Even if the evidence against Defendant were true but not proved, her alleged days as a drug mule likely are over. The Government cannot meet its burden of providing clear and convincing evidence only by referring to the current charges

against Defendant. The Court also notes that Defendant has no criminal history associated with drugs, and no history of drug use or alcohol abuse. Although the quantity of drugs suggests she may have become a trusted courier, the Government offers no other evidence that Defendant was engaged in any sort of organized or sophisticated drug-smuggling operation. *Contra United States v. Perez-Lugo*, 979 F. Supp. 2d 197, 199, 202 (D.P.R. 2013) (noting that drug traffickers with ties outside the U.S. have the resources to flee in case involving conspiracy to coordinate 19 drug transport operations); *United States v. Jones*, 804 F. Supp. 1081, 1089 (S.D. Ind. 1992) (sophisticated drug operation demonstrating knowledge of federal narcotics laws, drug delivers arranged through pager system, and false identities warranted detention). Finally, Defendant has no history of violence and was not found in possession of a weapon when she was stopped at the border. For these reasons, this factor weighs neither for the Government nor Defendant.

### IV. Conditions of Release

A person facing trial is entitled to release under the least restrictive conditions that will reasonably assure the appearance of the person and should only be denied in rare circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of risk, a defendant must still be released if there are conditions of release that may be imposed to mitigate the flight risk or risk to the community. See 18 U.S.C. § 3142(e). Any doubts about the propriety of release should be resolved in Defendant's favor. *Motamedi*, 767 F.2d at 1405.

Pretrial Services noted a risk of Defendant's nonappearance "based on the nature of the alleged offense, her ties and travel to Mexico, a prior documented failure to appear, limited time at her current employment, and her mental health history." (Doc. 3 at 4.) However, Pretrial Services also advised that a combination of conditions could reasonably minimize this risk. (*Id.* at 4–5.) Judge Bowman's Release Order adopted Pretrial Services' recommendation, adding the condition of release to a third-party custodian (Defendant's brother, whom Pretrial Services deemed "suitable" for third-party custodianship). (Doc. 7.)

///

///

The Court will affirm the Release Order but adds two more conditions. First, Defendant shall be released to the third-party custody of her brother, Bryan Urias, *and shall reside with him*.

Second, Defendant shall post a $15,000 cash or secured bond. When setting a cash bond as a condition that would reasonably assure a defendant's appearance, the Court is mindful not to "impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). But the Court also notes a defendant's inability to comply with a financial condition of release does not necessarily contravene § 3142(c)(2). *U.S. v. Fidler*, 419 F.3d 1026, 1028 (9th Cir. 2005). Where a district court determines that the amount of the bond is necessary to reasonably assure the defendant's appearance at trial, detention for inability to post the bond does not violate § 3142(c)(2). *Id.* (affirming a $300,000 bond condition where the district judge found the condition "necessary given that the Defendant . . . is a flight risk"). Here, the quantity of drugs seized from Defendant's car, her ties to Mexico, and the sentence Defendant likely faces if convicted give the Court concern about the risk of her fleeing to Mexico. The Court therefore finds it necessary to require a $15,000 bond, cash or secured.

## V. Order

For the foregoing reasons,

**IT IS ORDERED DENYING** the Government's Appeal (Doc. 10);

**IT IS FURTHER ORDERED AFFIRMING** the Release Order (Doc. 9), with additional conditions. Defendant is to be released upon posting of a $15,000 cash or secured appearance bond. Following posting of the bond, Defendant through her counsel is to request a bond/release hearing to be scheduled at a future date before a Magistrate Judge. Any sureties and the third party custodian must be present at the bond/release hearing. Defendant is to sign amended release conditions with the following conditions:

**(1)** The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

**(2)** The defendant shall not commit any federal, state, tribal, or local crime.

**(3)** The defendant shall cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

**(4)** The defendant shall **immediately** advise her attorney and Pretrial Services, in writing, **prior** to any change in residence address, mailing address, or telephone number.

**(5)** The defendant shall report as directed to the U.S. PRETRIAL SERVICES 1-800-758-7505 or 520-205-4350; 405 W. Congress St., Suite 2600, Tucson, AZ 85701.

**(6)** The defendant shall abide by the following restrictions on his or her personal associations, place of abode or travel: **The defendant shall not travel out of the State of Arizona, unless prior court permission is granted to travel elsewhere.**

**(7)** The defendant shall surrender all travel documents to Pretrial Services, and will not obtain a passport or other travel document during the pendency of these proceedings.

**(8)** The defendant shall not possess or attempt to acquire any firearm, destructive device, or other dangerous weapon or ammunition.

**(9)** The defendant shall maintain or actively seek employment (or combination work/school) and provide proof of such to Pretrial Services.

**(10)** The defendant shall consume no alcohol. The defendant shall participate in alcohol treatment and submit to alcohol testing, and make copayment toward the cost of such services, as directed by Pretrial Services. The defendant shall not obstruct or attempt to obstruct or tamper, in any fashion, with the efficiency and accuracy of any substance use testing or monitoring.

**(11)** The defendant shall participate in a mental health treatment program and comply with all the treatment requirements including taking all medication prescribed by the mental health care provider and make copayment toward the cost of services as directed by Pretrial Services.

**(12)** The defendant shall be released to the **third-party** custody of Bryan Urias and shall reside with Bryan Urias.

**(13)** The defendant shall reside at an address approved by Pretrial Services and shall not relocated without prior permission from Pretrial Services.

Dated this 22nd day of November, 2022.

Honorable John C. Hinderaker
United States District Judge